# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 12, 2001

## STATE OF TENNESSEE v. FREDERICK G. ANDERSON

**Appeal from the Criminal Court for Davidson County**
**No. 2000-B-1053     J. Randall Wyatt, Jr., Judge**

---

**No. M2001-00708-CCA-R3-CD - Filed March 5, 2002**

---

Frederick G. Anderson appeals his convictions of two counts of attempted aggravated rape, aggravated kidnapping and aggravated burglary. He received his convictions at the conclusion of a jury trial in the Davidson County Criminal Court. Presently serving an effective nine-year sentence as a violent offender, he challenges the sufficiency of the convicting evidence in this appeal. Because we are unpersuaded by the defendant's claims, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

F. Michie Gibson, Jr., Nashville, Tennessee, for the Appellant, Frederick G. Anderson.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Kimberly Cooper and Shelli Neal, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

In the light most favorable to the state, the evidence at trial demonstrated that the defendant and the victim became romantically involved in July, 1999. Their relationship deteriorated to the point that the victim ended it in February, 2000. The defendant was very possessive of the victim, and although they were no longer involved, he continued to call and visit the victim seeking reconciliation. He inquired of the victim the identity of individuals with whom she associated and her whereabouts when away from home.

During the evening of April 17, 2000, the victim was entertaining a male friend in her apartment. The defendant phoned the victim's residence on several occasions. The victim's male friend talked to the defendant during one of these phone calls. Shortly thereafter, the defendant arrived at the victim's apartment. He began banging on the door, demanding to speak with the

victim. When the victim did not open the door, the defendant climbed through the bedroom window of the victim's six-year-old daughter while the child slept nearby. The victim came into the bedroom, and the defendant took a telephone out of her hand. The defendant then went toward the victim's male friend, who was by the front door. The victim's male friend, who was scared and thought the defendant might have a weapon, fled the apartment.

The defendant closed and locked the front door, and he took the victim by her throat. Angered, he demanded to know why she was doing this to him and who her male friend was. He hit her on the side of her chin. He demanded to know if the victim had slept with her male friend. He then grabbed the victim by her hair and dragged her into a bedroom. He threw her onto the bed, took off her pants, then got on top of her after she fell to the floor. He covered her mouth with his hand so that she could not breathe. The defendant began touching the victim's vaginal area, insisting that she was making him do this and he never wanted it to be that way. The defendant attempted to penetrate the victim with his penis, but he could not get an erection. He touched her vaginal area with his penis, however.

The defendant began to worry that the police were on their way, and the victim was able to put her pants on and get up off the floor. The defendant took the victim to the living room, and he continued to interrogate her about personal matters and whether the police were coming. The victim was hesitant to attempt an escape because of her daughter's presence in the apartment. The defendant eventually ran outside and fled the area.

The victim's male friend returned with police officers. Thereafter, the victim identified the defendant as the perpetrator of the crimes, and warrants were issued for his arrest.

To counter the state's proof, the defendant presented evidence that he and the victim were still romantically involved in April, 2000. He conceded that the relationship was a troubled one. He claimed that they were engaged to be married, although he had previously moved out of the victim's apartment due to frequent disagreements with her.[1] The defendant claimed to have telephoned the victim's apartment on April 17, and as a result of their conversation, he believed that there was an unwelcome stranger in the apartment threatening the victim's and her daughter's safety. He therefore went to the apartment.

The defendant claimed that through a window, he saw the victim's daughter sitting on her bed crying. The girl told the defendant that there was a man in the apartment, and she opened her window so that the defendant could come inside. When the victim's male friend saw the defendant, he left the apartment. The defendant claims he became suspicious that the man was not a stranger. When he inquired about this, the victim began to cry. He also claimed the victim became amorous, but he wanted no part of it. The defendant believed the victim was being unfaithful to him,

---

[1]The victim denied that the defendant had ever resided with her, although she admitted that he was a houseguest on occasion during their relationship.

and he ended their relationship on the spot. He claimed that the victim pulled on his jacket in an attempt to detain him; however, he left the apartment.

Although the transcript of the evidence does not contain the jury's verdict, it is apparent from the judgments contained in the record that the jury rejected the defendant's version of events and convicted him of two counts of attempted aggravated rape, one count of aggravated kidnapping, and one count of aggravated burglary.

The only question before us is that of the sufficiency of the evidence supporting each of the defendant's four convictions. When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In determining the sufficiency of the convicting evidence, this court does not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. *Id*. at 835. In *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973), our supreme court said, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the state."

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. *Id*. at 914.

The defendant at bar does not challenge any specific component of the state's proof. Rather, he makes a general assault upon the jury's accreditation of the state's evidence over his own. Unfortunately for the defendant, such was the jury's fact-finding prerogative.

In the light most favorable to the state, the evidence demonstrates that the defendant had embarked upon a campaign of unwelcome attention, if not outright harassment, of the victim after the demise of their romantic relationship. On the night of April 17, the defendant forced his way into the victim's home through a window after discovering that another man was inside with the victim. The defendant approached the other man. Frightened and concerned that the defendant might have a weapon, the other man fled. The defendant forcibly detained the victim in the apartment, and he touched her vaginal area with his fingers and his penis. The victim had bruises and scratches on her arms, legs and chin from the incident.

The crimes of which the defendant was convicted are defined, in pertinent part, as follows:

Attempted Aggravated Rape

(Aggravated Rape)
Aggravated rape is unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
 . . .
(2) The defendant causes bodily injury to the victim . . . .
Tenn. Code Ann. § 39-13-502(a)(2) (1997).

(Criminal Attempt)

A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
. . .
(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
Tenn. Code Ann. § 39-12-101(a)(3) (1997).

Aggravated Kidnapping[2]

 Aggravated kidnapping is false imprisonment, [defined as knowingly remov[ing] or confin[ing] another unlawfully so as to interfere substantially with the other's liberty], committed:
. . .
(3) With the intent to inflict serious bodily injury on or to terrorize the victim or another; [or]

---

[2]The defendant was charged with both the "terror" and the "bodily injury" modes of aggravated kidnapping, and court minutes reflect that the jury found the defendant guilty of both modes of the offense.

(4) Where the victim suffers bodily injury . . . .
Tenn. Code Ann. § 39-13-304(a)(3), (4) (1997); *see* Tenn. Code Ann. § 39-13-302(a) (1997) (false imprisonment).

Aggravated Burglary

A person commits [aggravated] burglary who, without the effective consent of the property owner:
. . .
(3) Enters a [habitation] and commits or attempts to commit a[n] . . . assault . . . .
Tenn. Code Ann. §§ 39-14-402, -403 (1997).

Upon consideration of the evidence in the light most favorable to the state, we are persuaded that the evidence sufficiently supports each of the defendant's four convictions. As outlined in our factual recitation above, the state made its case for each of these crimes. Nothing in the defendant's appellate argument convinces us otherwise.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE